This case for today, Moore v. Brown, Mr. Kellum. May it please the court. My name is Nate Kellum and I represent the appellant, Greg Moore. Mr. Moore comes to this court seeking relief from two park rules authorized and enforced by the City of Dallas that have been used to ban his religious expression. Namely, it has been used to ban his use of a sketch board to illustrate religious messages in a public park. Both of these rules are prior restraints. One demands a permit for structures larger than four by four feet. Let me be just a little bit clear about the framework. It's a First Amendment free speech framework, right? And also due process, so it involves both. But you're not claiming that his religion requires him to have a sketch board and he's being prevented from doing that? It's not a free exercise? It's not a free exercise, yeah. Okay. And then is this an as-applied or facial challenge? And if it's both, then explain each one or, you know, give me that framework because it's a little unclear in the briefing. I'd be glad to do so, Judge. It does involve both. It involves facial in the sense that you're dealing with language on both rules. The structure rule, which is structures larger than four by four feet, and as interpreted, what that means is any object that is larger by four feet in any measurement. So that's being challenged on its face. Also as applied, as it's been applied to— It violates the First Amendment or only on due process, on the facial? The facial is on due process. Okay. And thanks for that opportunity to clarify. And then as far as the free speech in the First Amendment, that is as applied to the structure rule, because as applied, what it does is it bans his speech in a traditional public setting. The Senate is trying to back away from this contest. It says it doesn't—do you think this case is moot? Why not? They claim that the issue is moot regarding one of the rules, and that's getting to the second part of Judge Haynes' question, and that is the public event rule. I'm keeping myself. Certainly. The public event rule, which is a challenge on its face and also as applied on its face, relates to actually both due process and free speech, because what it does is it— Let me pull you away from the language of the First Amendment for a moment. There are a lot of things about plain problems with that ordinance, with licensing, and it's kind of a textbook example of what you ought not do in the First Amendment. But the city, it seems to recognize that at least as applied in this situation, that we're not—this is fine. You're backed away from it and so forth. Now, they're a little late doing it, and we've got a very strong voluntary cessation principle that makes us— you don't just have a right to do that. But my question is that your argument seems to be focused heavily just upon him, and I'm not sure with your facial attack what exactly your argument is. So it would help me a lot if you would just tell me, first off, why this case is not moved. Sure. Thank you, Judge. Because, regrettably, they didn't just say, well, you can go speak. Now that we've recognized that we've got some constitutional concerns here, we'll let you go speak in a great long area at the Harts Boulevard. Regrettably, they didn't say that. What they did is they said that, well, after looking at it, we're not going to apply the public event rule to you. We're going to make an exception for you. We're going to keep this rule in place, but we're not going to apply it to you. Then you can get maybe a long-term permit. But what we are going to apply to you. Now, the public event rule, what they said is, now that we understand that what you're trying to do is talk to a couple people at a time, as opposed to have some big, you know, they have concerts in this park, and no one would dispute that you ought to have a license before Ariana Grande shows up in a relatively small park and puts on a concert, right, no matter how expressive her music might be. So as far as your client, when they discover what he really wants is to engage a couple people, they say, well, okay, I mean, that's fine. So then that kind of is the end of the analysis on the public event as far as one or two people. If he wants to go put on something for hundreds of people, they're going to say, yeah, he needs a license. But really you're not debating that that makes some sense. No, no, we're certainly not challenging the ability to manage large events and that sort of thing. It's really the issue with the public event is how it's defined, and that is any activity that attracts an audience. And we actually tried to work with the city on this. And what they told us in a letter, August 7, 2015, by council, is that the public event rule does apply to your activity, even though all you're doing is with a sketch board trying to draw the attention of just one or two others. They said that it applies to any activity that tries to draw the attention beyond the speaker. So those were the words, and that's what prompted the lawsuit. Now, after we filed the most preliminary injunction, they said, well, we don't think the public event rule is going to apply to you. But at this point, then they have to demonstrate lewdness. And to demonstrate lewdness, what they would have to do is actually alter the rule. The rule itself still literally applies to him because there's no question he tries to attract an audience. Now, that's not Aureo Grande. He's not trying to get thousands of people, but he's certainly trying to get one or two. The city can plainly, with a time, place, manner, and proper permitting system, deal with the free expression on the park, as my colleague is pointing out, musicals, whatever, and so forth. So it sounds to me like you're only talking here about an as applied to him precisely. You're not attacking the permitting system. No, you're not. I'm not a permitting system as a whole, but I am attacking the permitting system. Regrettably, it doesn't deal with large events. It doesn't define it that way. How it defines it, and this is actually in the rule itself, is attracting audience. Well, what do you want us to do? To enjoin the two rules. I'm sorry? To enjoin. This is a preliminary injunction. Enjoin what? The two rules. That would be the structural rule, which they say does apply to him. But now tell me that. What do you ask him to enjoin precisely? Sure. To enjoin the application of the two rules to his expressive activity. Well, they've already agreed to that. I mean, they've already agreed to two things. They've agreed that what he's specifically doing, now that they understand it, and admittedly they've been a little confused and mixed up, but now they say we understand. He's just trying to talk to a few people. We're fine with that. So they've already agreed to that. Then on the structure rule, the only thing they've said is we don't want you in the middle of Hart Boulevard. You've got the whole rest. And again, I mean, Hart Boulevard makes it sound huge. The whole park is only five acres. I mean, it is a tiny park. This is not Central Park in New York, as you well know. And so the whole briefing makes it seem like this grand, you know, the grand lawn and all this stuff. I mean, the whole park is tiny, and thousands of people go there. And so there does need to be some, you know, sensibility to how this is done. And so it's perfectly legitimate to say we don't want sketchboards in the middle of this passageway because it's not just your guy. He puts his sketchboard up. Now the next guy wants to put his sketchboard up. Now another guy wants to put it. And pretty soon Hart Boulevard is impassable. And then what do you do? So that's the whole reason why you have time, place, and manner, so-and-so, so-and-so, and a structure rule isn't even an expression issue in the first place. But they have said with respect to your guy, we'll give you a permit to be at the end of Hart Boulevard. So why isn't that good enough? It's a very small distance from where he wants to be. It's not three, you know, blocks away or whatever. Why isn't that good enough? Because venue can be very important in free speech matters, Judge. And on pages 378 through 81, the second affidavit of Mr. Moore, he explains why the ends, the plaza, because really it's the difference between the park, which is the grassy area, that's where the people are, that's where people are located, and the plaza over there by the water fountains. Well, listen, the city can create time, place, and manner restrictions. Implicit in that is that that's not content-based. It's a regulatory measure. And what you're describing is simply you may want to be someplace else, but the inquiry then becomes whether this is sufficiently narrowed to the time, place, or whether they are really suppressing more speech than is necessary for their time, place, and manner. So your preference, you may be having more accessible, but they've got to deal with the traffic and the location and so forth, so you don't get to choose your location. That's an excellent point, Judge. This is the problem with it, is that the way it's worded and the way it's used, the way it's construed, remember, is any object that is larger than four feet in size. Well, coolers are larger than that. So are blankets. So are playpens. So are umbrellas. So are crutches. So are butterfly nets. But they don't apply it to these things. And for that matter, it doesn't appear that they're applying it to telescopes or tripods or even things that are speech-related. But what we do know is that they apply it in this way to Mr. Moore so that they're telling him, among all these other things, that would technically, literally violate this particular rule. Well, you're now narrating your claims as applied to him, and you're basically arguing content-based discrimination. It is content-based because the vague language. What's the basis for that? Yes. What evidence do you have that somebody who, you know, if you go across the street to Lark on the Park, they have a bunch of art up there. What evidence do you have that somebody who's sitting with a sketch board drafting the art to take over to, granted, that's actually a chalkboard, but okay, let's say they're going to take it over to Lark on the Park and post it up. What evidence do you have that those people are treated differently? They're allowed to set up a sketch board in Hart Boulevard and all of that, whereas your client is not, because that would be the expression-based. Sure. The issue—now, of course, that could be viewpoint, but as far as content, this is the issue—is that because of the vagueness of it, where it is any object larger than four feet, then that is so broad. What it does is that gives them arbitrary ability to essentially pick and choose because they're—or are they going to tell all the coolers to leave? Are they going to tell all the blankets? Well, you need to pick up your blanket and leave because you have an object that's bigger than four feet. The problem is this thing is blocking the way. I mean, if somebody stuck a cooler in a place where kids could trip over it, whatever, I'm sure they would tell them to move. So the problem is you've got somebody wanting to set up a sketch board, not driving through with a stroller, not putting a blanket on the grass. You've got somebody who's arguably blocking the way. And if you allowed a bunch of him, maybe he by himself would be okay, but if there were a bunch of him, you would make the whole thing impassable. And that's what they're trying to deal with. And I'm not saying it's a perfect way that they've chosen, but the question is whether you've got a First Amendment claim, not whether they're running the park. I mean, frankly, the park is being run pretty well. But putting that aside, the question is not whether they're running the park well or poorly, but whether their application to your client is interfering with his rights on a facially neutral provision because the structure rule is facially neutral as far as content and that kind of thing, and it's not directly related to expression. Because the record shows that there is no concern about either congestion or blocking the walkway. In fact, what he seeks is either being on the park boulevard or near it, so he can be in the grass. Well, they said he can be near it. No, no, what they're saying is he can be in the plaza. They're saying he cannot be in the Great Lawn. That is off limits to Mr. Moore, but they say he can be in the plaza. So he can't be in this area, but he can be in the plaza area, and so he misses all the people that are in the Great Lawn. And so that's the concern of Mr. Moore. I thought that they said he could be. Well, we'll ask them where they're saying he can be. But you still have a facially neutral provision rule in the structure, because if I wanted to go and set up a building in the middle of Hart Boulevard, I think people would say, well, that's a problem. You want to enjoin a rule, it would be chaos if these two rules were enjoined. We would have concerts going on with nobody knows they're coming. We would have people could put up whatever they wanted in the middle of Hart Boulevard. You would have a complete chaos. So you can't do that. I mean, your client is not the only person using this park, and this is one of the problems, is that you have to try to, as a city or as an entity running the park, find a way that everybody has their free expression, everybody has all of this and that, but everybody gets to use the park, because it's not just you. It's also me. It's also this other person. It's also that other person. It's this little child, et cetera. Well, if they had a rule, of course, language in First Amendment cases matter, and how they construe it matters. Could I ask you a question? Yes, Charles. I'm not sure. I don't want to step on the question. I'm not sure what it is, but what's the language, precise language, that you wish to say fails the First Amendment test? With the structural rule is that any piece of work that is bigger than four feet in any measurement, and the reason why that's constitutionally problematic is because it can include a building. It can include a tent. It can include a canopy, but it can also include a flag. It can also include a banner. The injunction, as I understand it, you're talking about an injunction to enjoin the enforcement of that rule as written? And as construed, yes, Judge. And as applied in this situation. Yes, Judge. That's exactly right. All right. And so that's where the concern comes into play, is that if it was just a structural rule that dealt with actual structures, we wouldn't be here. The issue is that it goes beyond structures. Structures do contemplate a tent. They do contemplate a building. They do contemplate something that's beyond. Let me ask you a question about the way this, as we're talking about an as-applied case, what is the process that leads to a permit? Who decides and where? Is that in the record? It's very scant, and that's an issue as well, because what you have is it's all at the whim of the administrator. Stay with me a minute. Yes, Judge. I learned some information about this particular ordinance and how it's administered. Who is it that gives you a permit if you have to have a permit? Where do you get your permit? Who decides? The foundation. I'm sorry? The foundation is the Woodall Rogers Park Foundation. Okay, foundation. Help me go further than that. Is there somebody, a person at the foundation that does this? Are there rules for obtaining a permit or what? It's on the discretion of the administrators. There are no rules. Well, I'll find something in writing that says what you just said, that you may obtain a permit at the discretion of this person, or you may obtain a permit with no guidance as to whether it's issued or not. No, what you'll find is that they require a permit, but there are no guidelines. There are no written guidelines. There are no objective standards. Is there a single person that decides that? Tara Green is the president of the foundation. I'm sure she would have say so as far as any permit, but there probably are others that are involved. You applied for a permit, did you? No, no, Your Honor, we did not. You just say you don't have to apply for a permit. To speak in the, you know, we were told that to speak in Hart Boulevard, in a great long area, you do have to apply for a permit, but we've been told don't bother because you will not get one. Okay, well, basically you refused the, they refused a permit for you on purpose. Yes, sir. Okay, good. You saved time for a vote of Mr. Kellum. Mr. Ricketts, Ms. Ricketts, I'm sorry. Let's start with a permitting process. What is the structure and what are the guidelines, or do you have a single person who decides when a permit will issue and not issue? Good morning, Your Honor. Yes, happy to start with the permitting process for a structure rule. You have 19 minutes, so let's try to use them all and get it all in the first two minutes. Thank you. Thank you, Your Honor. All right. The record citations for the structure permitting requirement itself are contained at a record ROA 175, as well as ROA 406, which is where the district court refers to the park website. Individuals are directed to contact the Park Foundation in order to apply for a permit for a structure that follows. What are the guidelines for the permitting official? Your Honor, the record is not clear on that. Is that because there aren't any? No, Your Honor. We don't think that's the case. The reason the record was not developed on this issue is that the unbridled discretion challenge as to the structure rule was not raised until the reply brief below. At that point, defendants had already put in their PI response and their papers. And it would be their burden on a preliminary injunction to put in what they need to prove on that. So if there's an absence of record, that goes against them. That's correct, Your Honor. We cite the Beal case on page 25 of our brief for that proposition to the extent there's conflicting evidence about discretion that counts as in favor of affirmance. Your Honor, if I could for a moment back up. We think the district court correctly held that Mr. Moore is not entitled to injunctive relief because he failed to establish a likelihood of success on the merits of any of his claims. What do you do about the fact that the forfeit rule would apply to things like ice chests? For example, what if you had an ice chest that had an expressive message of some sort on it, some political or social expression written on the side, and it's more than four feet? Your Honor, we think there could be circumstances in which very large coolers could come within the scope of the structure rule. It's important to note, however, that the district court squarely rejected Mr. Moore's suggestion below that there was any evidence of arbitrary or discriminatory enforcement of this rule, much less the routine disregard that Mr. Moore claims. Even if, however, Mr. Moore had such evidence, it would at most be evidence of the park's limited resources, not of any constitutional problem with the structure rule. The rule really speaks in terms of defining a particular mode of expression, something about four by five or whatever the thing is, and that is the way that it's regulated. It doesn't. And how do you relate that to a time, place, and manner? In other words, you don't deal with the time of when he does this, regardless of when he does it, as I understand it. Place, you don't really give him a place. You're not saying that the rule doesn't say it's outside of the speaker's area or whatever else, outside of the walkways. It doesn't speak in terms of a place, and all we're talking about is the manner, and that's purely of speech itself, so that any matter of that regulation, you reach all speech that could be made by the use of the four by five receptacle. Is that right? No, Your Honor, it's not, for a couple of reasons. First, to start with your second point about the standard. We think O'Brien is the standard because this is at most an incidental restriction on expression, and Mr. Moore has effectively conceded that any error on this point was, quote, seemingly harmless. Well, I think I know the First Amendment law reasonably well, but what I'm trying to get at is to understand what you're doing out there. It's very fact-based, and what I'm suggesting to you is that, as I understand, you just have a ban that speaks in terms, you call it, quote, structural. The ban is that you can't use a four by five whatever, regardless. No, Your Honor, to be clear, the requirement is that structures larger than four by four require a permit. Okay. And the reason for that. Well, they're banned absent permission. There is a permitting requirement. Right, and that in and of itself, without any other evidence as to how that's just unbridled discretion to decide. How do you do that? You say they attack it, but you're defending on the basis of time, place, and manner. Your Honor, so to be clear, any absence of evidence about asking discretion, it's Mr. Moore's burden because. Because he's got an absolute rule that says, here's this. All I know is that no matter where I go or what I say or what the message is or the time of it, if it's this kind of a sign, I can't do this without permission. And nobody tells me under what conditions you would grant permission. Yes, sir. Again, Your Honor, the case is. That's content-based. Respectfully, Your Honor, it's not. And actually, any argument that there's a content-based restriction here has been waived. Mr. Moore has never argued that the structure rule was applied on a content basis. Okay, we don't apply strict scrutiny. But nonetheless, I just don't understand. It is so vague. And it's so sweeping. What about overbreadth? So, vagueness, Your Honor, let me speak directly to that test, if I may. Okay, please. The district court correctly rejected the argument that the structure rule is vague. The standard for vagueness, of course, is what an ordinary person would understand. Mr. Moore's sketchboard fits the common understanding of what a structure is. His sketchboard is a wooden cabinet on wheels. It has a door with a vertical hinge. It opens up to create a solid surface on which he secures a piece of paper. The context of the rules provide further clarity about the types of structures that are involved because tents and tables are also structures. There's nothing expressive about the concept of structure. So your point of it's an incidental restriction is because the structure might just simply be a table. It doesn't say anything. It doesn't express anything. The fact that he particularly wants to use a structure for expression is incidental to the overall purpose and scope of the structure rule. That's absolutely correct, Your Honor. And if I could speak perhaps to the point that Judge Higginbotham raised about the time and the place aspects of this permitting scheme, the interests of the government here relate both to the safety of park visitors as well as the coordination of park space. So that involves some degree of oversight, both of the types of structures that are brought into the park as well as where those structures are placed. I thought he could be on the Pearl Lawn without a permit. Yes, Your Honor. There is a place. The Pearl Lawn is always available on a first come first serve basis. The park has made clear that we want this to be a place for free expression. But as Your Honor pointed out earlier, the park actually has this dual role. It is both a park. It is also a venue for cultural and civic and social programming. They have dance classes in there. They have concerts. They have speeches. They have all kinds of events there. That's correct, Your Honor. And under the use agreement, the foundation is specifically charged with providing that programming for the benefit of the citizens of Dallas. The foundation is required to, quote, make every reasonable effort to institute and hold programs, activities, and events at the park. That's in the record at 276. So we have this park that's also a venue. It's a highly trafficked venue. Last year alone, there were a million visitors to the park. The park hosted some 1,300 events in this very small space. And to bring this back to the specific location within the park that's at issue here, Your Honor, Judge Haynes pointed out that the Great Lawn makes this sound like a great expanse. The Great Lawn is this mixed-use green space that's about the same surface area as a football field. It's a little bit narrower, a little bit longer, and it's bisected by a pedestrian walkway called Hart Boulevard. So where is it that you all said he can put up this structure relative to? Can he put it on the Great Lawn? No, Your Honor. We think the same interests that mitigate against permitting, you know, putting up structures in the middle of Hart Boulevard also apply to the lawn. But what Mr. Moore said in filing this lawsuit is that he wanted to be, quote, on or in the vicinity of Hart Boulevard. The record or the map, for reference, Your Honor, is in the record at 404. So Hart Boulevard bisects the Great Lawn, and it actually widens at either end. And so there are these plaza-like spaces that are the ends of Hart Boulevard. And so what the foundation has said is, look, we're happy for you to be here 20 yards in this direction or 20 yards in that direction. And what the record shows about the ampleness of those alternatives is that the ends of Hart Boulevard are also immediately adjacent to the Great Lawn, which is the audience that Mr. Moore seeks to reach. They're also among the areas of the park with the highest volume of pedestrian traffic. There's all sorts of attractions that are nearby. Where is this in relation to Saver? Hart Boulevard goes right next to Saver, Your Honor. So it is the plaza that's sort of immediately adjacent. Right by Saver. Exactly. That's a highly trafficked area. Right. So this is not a situation where defendants or the park or anyone else have asked Mr. Moore to go any great distance away where he might not be able to reach those that he desires to reach. We're really talking about the space of less than 20 yards. The district court correctly held that he has ample alternative channels for the expression that he desires to engage on. Now, is there any indication that someone else with the sketch board who's doing something different, not doing a religious message, is being treated differently? No, Your Honor, not at all. The district court squarely rejected Mr. Moore's implication that there was any sort of arbitrary or discriminatory enforcement of this rule. And as I said, even if he had such evidence, it would merely be evidence of the park's limited resources and inability to police the space 24 hours a day. Your definition of public event, any activity that is intended to attract an audience. Yes, Your Honor. Did it end there? Any activity that's intended to attract an audience. That's an awfully vague statement. You need some kind of standards, and I'm not finding standards. That you offer alternative means is very, very important. But I found that definition to be rather, strikes me as vague. Any activity that's intended to attract an audience requires a permit. Your Honor, if I could try to clarify there. Effectively, the public event definition has four parts. It's intent to attract and an audience, which is a group of listeners or spectators. And so effectively what happened here, Your Honor, is that unfortunately there was just a lot of confusion about the type of activity that Moore sought to engage in. And once it became clear what he sought to do, then the park made very clear that the public event rule does not apply to Mr. Moore. And the district court properly credited. You don't attempt to apply the public event rule, period. We certainly don't attempt to apply it to Mr. Moore. What's the rule that requires a permit? So there is a separate permitting requirement for public events, Your Honor. For public events. What's its language? The public event rule is contained in the record at 172. And again, so we're dealing with a space where there's this sort of hybrid role that the park has where it's a park, but it's also a venue. And so there's a set of requirements laid out in the rules for private events. What is the rule? The rule, Your Honor, requires a permit for a public event that is intended to attract an audience if that public event meets a list of criteria, which are laid out in the record. And one of the criteria is, do you seek to use an area of the park other than the Pearl Lawn? Other than the Pearl Lawn, which is a space that the park is sort of permanently dedicated to spontaneous expression of any kind. So you can always come to the park and go to the Pearl Lawn. But because the foundation is in this position of trying to coordinate all of these events happening on a daily basis, they've said, look, if you want to be in another area of the park, we're happy for you to do that. But we need to know in advance so that we can coordinate with other programming. So that's the basic intuition behind the rule. Again, Your Honor, we think the district court properly credited the park's representation that it will not apply the public event rule to Mr. Moore. That's in the record at 409. Finally, Your Honor, we think there's actually an additional independent reason why Mr. Moore cannot succeed on the merits because he cannot satisfy Monell. Under Monell, a municipality is not liable unless the plaintiff can establish a policymaker, a policy that is a moving force behind a constitutional violation. We think that Mr. Moore has failed to satisfy any of those elements. Can you tell me a little bit about anybody that tracked an audience? So you have a fellow that puts on a blanket and is playing his guitar, and he's good. And people saw him, so he tracked an audience. Is that prohibited? There may be certain circumstances in which musical performances would fall within the definition of public event rule. So he's out with his family, and they stop and have a sandwich, and he puts on his guitar and is playing to his children. Your Honor, to be clear, we think the notion of entertaining your children or entertaining your family at the park when you're attracting attention that's not from the general public, we think that's not within the scope of the public event rule. Why is it not? It has the word intent, doesn't it? Intended to attract an audience? It does, Your Honor. So there is a scienter requirement, effectively, in order to create a public event. We think there's a difference between sitting around with your friends and playing the guitar as opposed to trying to have a pop-up musical festival of some sort. I mean, if Brett Michael showed up with his guitar, that could be a problem if a lot of people just suddenly start crowding around, and you've got an issue, and nobody knew that was happening. That's correct. All right. Unless the court has any further questions, we would rest on our briefs. We would ask this court to affirm. All right. Thank you, Ms. Ricketts. Mr. McKellen, you've saved time for a vote. Thank you, Your Honor. I'm at your pleasure, but I'll address a couple of things that I heard from opposing counsel. One is as far as just to clarify as far as the guidelines are really lack thereof in the structural rule. Unbridled discretion was brought up in the initial motion for preliminary injunction, but it's certainly true that we did not bring up anything about the structural rule until the reply. But you don't challenge it. Because we didn't even know about the structural rule. The problem is you don't challenge it. You're not challenging the permitting process. As I understand it, you're challenging the rules themselves as being vague and so on and so forth, and there's some problems with that argument here. We are challenging the rules, Judge, and that's certainly correct. But we're also challenging the permit process in the sense that they don't exist. In the sense that? They do not exist. There is no permitting process in the sense that there are no guidelines. There are no objective standards. There's nothing to guide the administrator as far as making these decisions. Such is life with a person with a guitar. Well, does it matter? Because if he's intended to attract an audience, well, what if he's a bad guitar player? He'd sure love to have an audience, and he intends to, but nobody's really coming. Does that person fall within it? Or a person who's playing the guitar. In fairness, if someone is going into the park with an intent to engage in speech activities that's intended to prevent an audience, I think that's pretty clear. The problem is how the permitting system itself. I think that's where a lot of things are. But I don't understand you challenge that. You're talking about existence applied to you and so forth. It is, and to be clear, both rules are challenging the unfettered discretion. So in that sense we're challenging. There's no specific rules or permit processes we're challenging because we don't know of any that are out there. But what we are challenging is how the process itself allows for unfettered discretion. One of the problems you have is this was a preliminary injunction. Y'all may do more discovery. You may discover a lot more things. This is a very preliminary stage. The district court rejected a preliminary injunction. Our law is only under extraordinary circumstances will this court reverse the denial of a preliminary injunction under Anderson v. Jackson. So you have a heavy burden to us. It's not just do we think this is a good rule, could we write a better one and all of that. It's whether a district court that denied a preliminary injunction but you still have your case, you can still develop it further, you can maybe find things that may alter the calculus, whether that should be reversed. So to me that's a pretty heavy burden that you're just kind of saying you don't like how this works but they've said your person is not subject to the public event rule and they've told him where he can put his structure that is within this general area that he wants to be. It seems like why are we here? Because he's being banned from communicating the message to an audience that he wants to try to communicate to. That's why we're here and I think that's a good question. But I think what it relates to is still the factors. If you meet the factors of preliminary injunction because that tracks here, this court is to review a de novo, then this court is to reverse. Well what if he wanted to stand on Harwood Boulevard or Pearl Street itself? I mean he would certainly get a lot more attention there but I think you would agree they could keep him off there because there's a safety issue, he's barring traffic. So that's the problem is we can't always be exactly where we want to be. We can't but what he wants to be is a place where he's clearly entitled to be and that is a public sidewalk, a place that has been recognized from time immemorial as the place that we go to share messages. Alright, thank you Mr. Kellum. Your case and all of today's cases are under submission.